# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

**MARY ANN BROOKS,**

     **Plaintiff,**

**vs.**                                     **Case No. 07-CV-00350 MV/WDS**

**MIROSLAV "MIKE" ROTH,
private individual, CIBOLA COUNTY
SHERIFF'S DEPARTMENT; JOHNNY
VALDEZ, individually and as Sheriff of
Cibola County Sheriff Department;
HARRY HALL, individually and as a
Cibola County Sheriff's Deputy; MANUEL
LUJAN, Magistrate Judge, Cibola County,
New Mexico; and MIKE CRUZ, individually
and as a New Mexico State Police Officer,**

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court on Defendants Cibola County Sheriff's Department's, Officer Harry Hall's[1], former Officer Manuel Lujan's, and Officer Johnny Valdez's [hereinafter collectively designated as "the County Defendants"] Motion for Summary Judgment (Doc. 27), filed August 2, 2007; and on Officer Mike Cruz's Motion for Summary Judgment (Doc. 45), filed October 3, 2007.  The Defendants seek judgment in their favor either on the basis of qualified immunity on Plaintiff Mary Ann Brooks' claims for violation of her civil rights brought pursuant to 42 U.S.C. § 1983 or because she has failed to state a claim for relief.  Because the Court concludes that Ms. Brooks has not shown that any of the individual defendants actors violated her constitutional rights and has failed to state claims against the Cibola County Sheriff's Department

---

[1]  Although Ms. Brooks' complaint named "Harold Hall" as a defendant, Harry Hall has corrected her misnomer and appeared as a defendant, *see* Doc. 27 at 1, and the Court has corrected the style of the case.

or Defendant Lujan, the Court will grant summary judgment in favor of the County Defendants and will remand to state court any potential state-law claims Ms. Brooks may have against Defendant Miroslav ("Mike") Roth.

## LEGAL STANDARDS

Because Ms. Brooks appears pro se, her pleadings and briefs are "entitled to a solicitous construction." *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action,'" *Celotex Corp. v Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). A defendant is entitled to summary judgment if the admissible evidence establishes "that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(b). To defeat summary judgment, the plaintiff "must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (citing *Celotex Corp.*, 477 U.S. at 324).

The doctrine of qualified immunity is "designed to protect public officials from spending inordinate time and money defending erroneous suits at trial." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). When a public official raises qualified immunity as an affirmative defense on a motion for summary judgment, "the plaintiff bears the heavy two-part burden of demonstrating that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged conduct." *Reeves v. Churchich*, 484 F.3d 1244, 1250 (10th Cir. 2007). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment-showing that there are no genuine issues

2

Case 1:07-cv-00350-JCH-WDS   Document 58   Filed 02/20/08   Page 3 of 12

of material fact and that he or she is entitled to judgment as a matter of law." *Nelson*, 207 F.3d at 1206 (internal quotation marks omitted).

Thus, the qualified immunity analysis begins with the court asking "whether the plaintiff's allegations, if true, establish a constitutional violation." *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005) (internal quotation marks omitted). Accordingly, the Court initially must accept as true Brooks' assertions made in her complaint and affidavit. *See Van Deelen*, 497 F.3d at 1159.

Brooks claims that Officers Hall and Cruz abridged her First and/or Fourteenth Amendment rights on August 30, 2006, by asking her friend if he "want[ed] to be arrested" when the friend challenged Hall's authority to tell another of Brooks' friends that she could not talk to Defendant Roth as Roth walked into a courthouse in anticipation of testifying against Brooks before a grand jury. Compl. at 9-10.

> To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment right to petition, we have indicated three elements must be present. The plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Van Deelen*, 497 F.3d at 1155-56.

"[T]o prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest" or of an interest in life or liberty. *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 & n.2 (10th Cir. 2000).

> "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed.2d 1043 (1998) (internal quotation marks omitted).

To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995). Rather, the plaintiff must show "a high level of outrageousness." *Id.* The conduct required to meet this standard depends on the circumstances. "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Lewis*, 523 U.S. at 853 (internal quotation marks omitted).

*Clark v. Edmunds*, ___F.3d ___, ___, 2008 WL 185615, *2 (10th Cir. 2008).

In determining whether an individual has been deprived of [the Fourteenth Amendment] right to procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and if so, then (2) was the individual afforded an appropriate level of process.

*Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).

## RELEVANT FACTS

Brooks originally filed her Complaint in state district court, asserting several causes of action against the County Defendants stemming from events that took place on August 30, 2006 and September 15, 2006. Defendants removed the case to federal court. The Court's review of the relevant facts must begin earlier, however, in order to properly analyze the issues at bar. The following facts are either undisputed or were submitted by Brooks and are accepted as true for the purposes of the Court's analysis.

On the late evening of July 17, Brooks called two of her friends, Paul Dice and James Linckes[2], asking for their assistance in moving her inoperable Honda automobile from Mike Roth's property. *See* Pl.'s Resp. (Doc. 35), Ex. 6 at 1. Roth was Brooks' former fiancé. Roth was drunk

---

[2] Brooks identifies the second friend as "James Halstead" in her brief, *see* Doc. 35 at 4, but she attached Dice's handwritten statement regarding the events as a true account of the events and Dice identified James' last name as "Linckes". *See* Doc. 35, Ex. 3 at 2 and Ex. 6 at 1.

that evening, had a history of being violent, and had earlier broken out the back window of the Mercury Topaz Brooks was driving, so Linckes brought an axe handle and a revolver with him. *See id.* While Dice and Brooks were towing away the Honda, Roth came outside with a machete and attacked Linckes. *See id.* at 2. Linckes deflected the blow and then fired a shot into the ground, causing Roth to return to the back of his property. *See id.* Brooks steered the Honda while Dice and Linckes towed it away from Roth's property, and the three then stopped a way down the road to reattach the car and discuss what had happened. *See id.* Roth came running up the road, with the machete raised above his head in one hand and a rock in the other. *See id.* at 3. Roth threw the rock and hit the Honda and continued running toward Linckes with the raised machete, so Linckes fired a shot at him. *See id.* Dice did not believe that Roth had been hit because he did not see Roth flinch and because Dice did not see any blood. *See id.* Roth turned around and went back to his property. *Id.* After discussing the possibility that Roth may have been hit, Brooks and Linckes went to Roth's house to try and determine whether he was hurt. *See id.* Although they did not see Roth, based on the noises they heard coming from his house, they did not think he was hurt. *See id.* at 3-4. The three left.

Roth later called the Cibola County Sheriff's Department, and Officer Hall was assigned to investigate Roth's complaint that he had been shot by Brooks' friend and that Brooks had stolen the Topaz. *See* Doc. 27, Ex. A at 2; Doc. 35, Ex. 3 at 1; Compl. at 12. Roth had a title to the Topaz that listed him as the owner; Brooks contends that Roth fraudulently signed the title and that she is the rightful owner of the car. *See* Compl. at 5. On July 25, 2006, Dice gave Hall the statement explaining how Linkes shot at Roth while Brooks, Dice, and Linckes were recovering Brooks' Honda. *See* Doc. 35, Ex. 3 at 2. Brooks was arrested for aggravated battery, unlawful taking of a vehicle, and tampering with evidence. *See* Doc. 35, Exs. 4-5. On August 17, 2006, Roth filed a

petition for domestic abuse in state court and obtained a temporary restraining order prohibiting Brooks from talking to him or coming within 100 yards of him. *See* Doc. 39, Ex. 1.

A grand jury was set to convene on August 30 to determine whether Brooks, Dice, and Linckes should be indicted. *See* Doc. 35, Exs. 3, 4. Brooks asked two friends to come to the hearing that morning: Jay Dee Pfannensteil, who says he is a "paralegal" and who had been assisting her, and Britt Verstegen[3], who had previously owned the Topaz. Pfannensteil approached Officer Hall, said he was a paralegal, and told Hall that Pfannensteil had information that may help to clear Brooks, but Pfannensteil would not give Hall his name. *See* Doc. 27, Ex. A at 3. Hall and the assistant District Attorney told Pfannensteil that he could not testify that day due to "notice and scheduling issues." *See id.*; *and see* Doc. 35, Ex. 4 (informing Brooks that if she wished to present evidence at the grand-jury hearing, she would have to give the district attorney at least twenty-four hours notice). Pfannensteil became angry. *See* Doc. 27, Ex. A at 3.

The grand-jury hearing was canceled and rescheduled for September 13, 2006. After Brooks was aware that the grand-jury hearing had been canceled, Brooks, Pfannensteil, and Verstegen were standing outside the courthouse. *See* Compl. at 9. Hall came outside and Verstegen handed Hall an old registration for the Topaz that she said would clear Brooks of some of the charges. *See id.* Hall took the document inside to make a copy of it to give to the district attorney. *Id.*

Roth walked up to the courthouse entrance while Hall was inside making the copy. Verstegen said she wanted to talk to Roth and to question him about the Topaz, and she started

---

[3] The parties spell Britt's last name in various and inconsistent ways, *see* Compl. at 9 ("Vestigan"); Doc. 27, Ex. A at 3 ("Vergtegen"); Doc. 35 at 5 ("Verstegen"), Doc. 35, Ex. 3 at 2 ("Vergtegen" and "Verstegen"); Doc. 39, Ex. 4 at 8 ("Vestagan"); Doc. 39, Ex. 3 at 2 ("Vergtegen"); Doc. 42 at 4 ("Verstegen"), the Court has chosen the spelling used most often by Brooks.

talking to Roth. *See* Compl. at 9. According to Brooks, Verstegen said, "Hey Mike, I'm the one that sold the car to Mary, not you." Doc. 42 at 8. Hall came out of the courthouse and shouted at Verstegen that she could not talk to Roth "by court order." *See id.* at 9. Brooks asserts that Hall "severely frightened my witness" by shouting at her. *Id.* At that point, Pfannensteil interrupted Hall, saying "[Verstegen] can talk to [Roth]," and Hall then yelled, "do you want to get arrested?" at Pfannensteil. *Id.* Officer Cruz, who was at the courthouse on other matters and standing nearby, intervened when he heard "a loud disturbance," saw Brooks, Verstegen, and Pfannensteil standing near Roth, and heard Hall warning the three to "stay away" from Roth. Doc. 39, Ex. 3 at 2. Cruz walked over to assist Hall while Hall escorted Roth into the courthouse. *See id.*; Compl. at 10; Doc. 27, Ex. A at 4. When Pfannensteil "continued to be disruptive," Doc. 39, Ex. 3 at 3, Cruz shouted "do you want to get arrested" at Pfannensteil several times, Compl. at 10. Pfannensteil motioned for Cruz to lower his voice and then told Cruz to "shut up." Compl. at 10. Cruz responded, in a loud and "scary way," "did you say 'shut up' to me?" *Id.* At Brooks' friend's urging, Pfannensteil apologized to Cruz. *See id.* Brooks asserts that Pfannensteil was "extremely scared" and that her friends were "intimidated." *Id.* She later contended that, even if Cruz yelled only at Pfannensteil, she also felt afraid and threatened and that she believed that, if she had stayed while her friends left, she would have been arrested. *See* Doc. 39, Exs. 4, 5. Brooks was indicted on all charges and her criminal case is apparently still pending in state court.

Brooks also contends that, earlier on August 30, 2006, Hall scared and harassed her by questioning her, using a loud voice, about where the Topaz was located despite the fact that she had signed a form requesting counsel while being questioned. *See* Compl. at 10. This, she contends, violated her right to due process.

The state court held a hearing on the issue of a restraining order on September 14, 2006,

7

found that Brooks had committed an act of domestic abuse against Roth, and issued a permanent restraining order against Brooks contacting or approaching Roth.  *See* Doc. 35, Ex. 1.  At the hearing, Brooks submitted a list of her personal property that she still needed to obtain from Roth's home and the court included in its order a paragraph providing that she could retrieve her property from Roth's residence if she first made arrangements with the Cibola County Sheriff's office to also be present.  *See id.* at 5; Compl. at 6-7.  Brooks contacted the Sheriff's office to make the arrangements and gave it a copy of the order, but the next day, Hall told her that she could pick up her property at the Ramah police department.  *See id.* at 8.  Brooks contends that there were only four of her property items at the police department, instead of the thirty-one items she listed, but that Hall told her she would have to address that issue with the state court instead of going to Roth's residence.  *See id.*  Brooks asserts that Hall is, therefore, in contempt of the state-court order.

Finally, Brooks contends that, on August 30, 2006, she asked Officer Valdez about obtaining some reports and that he erroneously told her that an attorney would have to do that.  *See id.* at 11. This, she contends, violated her right to due process and the New Mexico Public Records Act.  *See id.*

## ANALYSIS

The Court concludes that Brooks has failed to establish facts that would tend to show that Hall or Cruz violated her constitutional rights.  Clearly, on August 30 Brooks was subject to the temporary restraining order prohibiting her from talking to, or being within 100 yards of, Roth, and she had no First-Amendment right of which this Court is aware to be present while Verstegen challenged Roth[4] about who was the rightful owner of the Topaz before he testified before the grand

---

[4]     Brooks insists that she never said anything to Roth, and the Court accepts that statement as true for the purposes of this analysis.  Although Brooks complains about Hall and

jury. While Hall and Cruz warned Brooks and her friends that they could be arrested if they did not

stay away from Roth (who was the state's prime witness) before the grand-jury hearing, which the

officers considered to be witness-harassment, the complaint does not allege that either officer

attempted or intended to prevent Brooks from appearing before the grand jury or from presenting

evidence or calling witnesses.  Indeed, the events Brooks complains of occurred after she knew the

hearing had been canceled for that day and would be reset and after she knew that her witnesses

could not testify that day because they had not been previously scheduled.   Although, in her

response brief, Brooks now asserts that warnings directed at Verstegen and Pfannensteil (regarding

Verstegen's statement of disagreement with what she assumed would be Roth's testimony and

Pfannensteil's insistence that Verstegen could talk to Roth) interfered with Brooks' right to appear

before the grand jury proceeding that was canceled, the facts as stated in Brooks' complaint and in

her sworn responses to interrogatories and admissions clearly show that Hall's and Cruz's

statements were directed solely toward the behavior of not staying away from, and challenging, a

grand-jury witness and disobeying an officer's orders.  Contradictory statements made in briefs will

not substitute for sworn affidavits in summary judgment proceedings.  Brooks has failed to allege

facts showing that, on August 30 she was engaged in constitutionally protected activity that Hall or

Cruz attempted to chill.  *Cf. Van Deelen*, 497 F.3d at 1155-56.

Further, the officers' actions, as described by Brooks, were not arbitrary, conscience-

Cruz scaring Pfannensteil and Verstegen, as a pro se plaintiff who is not a lawyer, Brooks cannot
bring a claim on behalf of another person. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d
1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without
counsel, but not the claims of others.").   Brooks does not contend in the complaint or in her
affidavit submitted in response to the motions for summary judgment or in her responses to
interrogatories or requests for admissions that any alleged intimidation on August 30 kept her,
Pfannensteil, or Verstegen from testifying on her behalf at the September 13 grand-jury hearing.

shocking, or outrageous in the circumstances of this case, where Brooks was subject to a restraining order, where Dice had submitted his hand-written statement to Hall that described how Linckes shot at Roth, where Verstegen challenged the state's primary witness about matters involving the charges against Brooks before a grand-jury hearing had commenced, and where Pfannensteil challenged Hall's authority to keep Verstegen from challenging Roth before Roth went into the courthouse. *See Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  Brooks has, therefore, not demonstrated a potential substantive-due-process or equal-protection violation.

Brooks has also not sufficiently alleged a violation of due process against Hall for attempting to question her about the location of the Topaz after she signed a paper requesting appointment of counsel on her criminal charges.  Brooks had the right not to respond to Hall's question and she apparently exercised that right.  Brooks has not pointed to, and this Court is not aware of, any viable cause of action for monetary damages when a police officer  asks a criminal defendant who is not in custody a question related to a pending criminal charge without the defendant's lawyer being present.  *Cf. Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976)  ("The Constitution and laws of the United States do not guarantee [a criminal defendant] the right to *Miranda* warnings.  They only guarantee him the right to be free from self-incrimination.  The *Miranda* decision does not even suggest that police officers who fail to advise an arrested person of his rights are subject to civil liability; it requires, at most, only that any confession made in the absence of such advice of rights be excluded from evidence.  No rational argument can be made in support of the notion that the failure to give *Miranda* warnings subjects a police officer to liability under the Civil Rights Act.")

Brooks also has not alleged a viable cause of action against Hall of which the Court is aware for not accompanying her to Roth's residence after Roth had taken what he said was left of Brooks' personal property to the Ramah Police Department.  Hall is not a party to the restraining order and

10

Brooks' remedy is to enforce the domestic abuse order against Roth in state court.

Officer Valdez did not violate Brooks' constitutional rights by erroneously telling her that an attorney would have to make a request for police reports before the grand-jury indictment issued. Further, as Officer Valdez points out[5], the New Mexico Inspection of Public Records Act specifically provides that "[t]he failure to respond to an oral request [for public records] shall not subject the custodian to any penalty."  N.M.S.A. § 14-2-8(A).  Although Brooks ultimately has a constitutional right to the production of police reports associated with her arrest and criminal charges, Valdez did not violate her due-process rights on August 30 by not immediately producing the reports before she was indicted upon her oral request or by giving her erroneous information.


Brooks has not alleged any facts rebutting Officer Lujan's affavit that he had no personal involvement in any of the alleged events, and she has made no allegations that the Cibola County Sheriff's Department committed any acts violating her constitutional rights after being apprised that such facts are necessary to state a cause of action against them.

Officers Hall, Cruz, and Valdez are entitled to summary judgment on Brooks' claims that they violated her civil rights or state law, and Officer Lujan and the Cibola County Sheriff's Department must be dismissed as defendants because Brooks has stated no cognizable claims against them.  There are no other potential federal claims that would give this Court continuing subject-matter jurisdiction and the parties have not engaged in any discovery.  The Court will, therefore,  remand the case to state court for resolution of Brooks' potential state-law claims against

---

[5] Officer Valdez's contention that Brooks made no allegations in her complaint concerning Valdez's alleged refusal to produce reports is erroneous.  *See* Compl at 11, ¶ 52.  The Court will not address any claims that Valdez violated Pfannensteil's right to documents that he allegedly requested in writing.

defendant Roth.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348 (1988) ("a district court has discretion to remand a removed case to state court when all federal-law claims have dropped out of the action and only pendent state-law claims remain").

      **IT IS ORDERED THAT**  the County Defendants' Motion for Summary Judgment (Doc. 27) and Defendant Mike Cruz's Motion for Summary Judgment (Doc. 45) are GRANTED;

      **IT IS FURTHER ORDERED THAT** the remaining claims against Defendant Miroslav Roth are REMANDED to state court.

                                   _____

                                  UNITED STATES DISTRICT JUDGE